O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTINA WIRTH, ET AL.,** | Case No.: SA CV 15-1470-DOC (KESx) |
| Plaintiffs, | |
| vs. | |
| **MARS INC., ET AL.,** | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [23]** |
| Defendants. | |

Before the Court is Defendants' Mars, Incorporated, Mars Petcare US, Inc., and the IAMS Company (collectively, "Mars") Motion to Dismiss Case ("Motion") (Dkt. 23). Having reviewed the moving papers and considered the parties' arguments, the Court hereby GRANTS Defendants' Motion.

**I. Background**

Plaintiffs Christina Wirth and Adam Wagner filed this putative class action on September 10, 2015, alleging Defendants violated the California Unfair Competition Law ("UCL"), California Legal Remedies Act ("CLRA"), and California False Advertising Law ("FAL"). *See generally* Complaint ("Compl.") (Dkt. 1).

Defendant Mars, Incorporated is a global food and beverage company that, among other things, manufactures and sells pet food products. *Id.* ¶ 14. One of the company's products is "Iams" brand cat food, a product that includes "seafood caught from the tropical waters between Thailand and Indonesia," *id.* ¶ 2, and is manufactured in Thailand, *id.* ¶ 36. To source the seafood, Defendants work with their Thai Partner, Thai Union Frozen Products PCL ("Thai Union"). *Id.* ¶ 3. Thai Union obtains seafood from various seafood and pet food canneries, which rely on large shipments of fish from so-called "motherships." *Id.* ¶ 4. These motherships, in turn, obtain the seafood from smaller fishing boats that "do not need to return to port and can instead continuously fish." *Id.* ¶ 5. The Department of Labor and various news outlets have reported these smaller fishing boats use forced labor, *id.* ¶¶ 4, 7, and Plaintiffs' Complaint describes the dangerous and inhumane working conditions experienced by individuals on these ships, *see, e.g.*, *id.* ¶¶ 7, 23–29. The parties agree that "once the fish is collected and stored" by the motherships, "fish that is the product of forced labor is mixed with fish that is legitimately caught, making any kind of tracing impossible." *Id.* ¶ 31.

The packaging for the Iams brand cat food does not mention the "likelihood that forced labor was used to catch the seafood going into the product." *Id.* ¶ 36. Defendants' respective websites similarly do not disclose the likelihood of forced labor in the supply chain. *Id.* ¶ 38. Plaintiffs allege Defendants have a duty to disclose the likelihood of forced labor in their supply chain because they possess "superior knowledge" of their "supply chain and the practices of its suppliers as compared to consumers," including their extensive experience marketing and distributing seafood-based pet food manufactured in Thailand. *Id.* ¶ 74. The Complaint further alleges Plaintiffs have been injured by Defendants' omissions because they would not have

purchased Iams products, or would not have paid as much for the products, if they had known that seafood in the product may have been sourced from forced labor. *Id.* ¶ 9.

Plaintiffs contend that Defendants' failure to disclose the likelihood of forced labor in their supply chain constitutes violations under the UCL, CLRA, and FAL. *See generally id.* They seek to certify a class of similarly situated individuals to pursue these claims. *See id.* ¶¶ 58–68.

On November 4, 2015, Defendants filed the instant Motion. Plaintiffs opposed on December 2, 2015 (Dkt. 28), and Defendants replied on December 18, 2015 (Dkt. 31). The Court held a hearing on February 1, 2016 (Dkt. 34).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, the Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

1  pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Additionally, the court may take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). For instance, the court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that the court may take judicial notice of "undisputed matters of public record," including "documents on file in federal or state courts," as well as "documents not attached to a complaint . . . if no party questions their authenticity and the complaint relies on those documents").

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**III.   Discussion**

Defendants seek to dismiss the Complaint on several grounds. Specifically, Defendants contend: (1) Mars has no duty to disclose the allegedly omitted information, (2) the safe harbor doctrine bars Plaintiffs' claims, (3) no reasonable consumer would be deceived as a matter of law, (4) Plaintiffs' FAL claim fails because it is based on alleged omissions, (5) the Complaint fails to state a UCL claim based on either "unlawful" or "unfair" conduct, (6) Plaintiffs have not

adequately established standing, (7) Plaintiffs fail to allege their fraud claims with particularity, and (8) Plaintiffs' proposed disclosure violate the First Amendment. *See* Mot. at 1–3.

### A. Duty to Disclose

Plaintiffs' "claim for liability under the UCL, CLRA, and FAL[1] is based on Mars's material omission of known slave labor in its supply chain." Plaintiffs' Supplemental Brief ("Pls. Supp.") (Dkt. 30) at 6. Plaintiffs' theory of liability is that Defendants have a duty to disclose this information to consumers because they possess "superior knowledge" of their supply chain.[2] Opp'n at 4. Plaintiffs contend that Defendants' failure to include this information on their products constitutes a material omission that is actionable under California law. *Id.* at 5. "Because Plaintiffs proceed solely on a 'pure-omission' theory of liability, the viability of each of the three causes of action alleged will turn on whether [Defendants] owed Plaintiffs a duty of disclosure." *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690, 2012 WL 313703, at *2 (C.D. Cal. Jan. 23, 2012).

Defendants respond that California law does not impose a duty to disclose supply chain information on product packaging. Mot. at 8. Because Mars did not affirmatively misrepresent any information, and because the information concerning the likelihood of forced labor did not present a safety issue for consumers, Defendants contend they have no duty to disclose this information under California law. Mot. at 8–9. Defendants request dismissal of Plaintiffs' three claims on this ground. *Id.* at 8–12.

Thus, the Court must determine whether Defendants had a legal duty under California law to disclose information concerning the likelihood of forced labor on their product packaging. "[T]o be actionable [an] omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). The "failure to disclose a fact

---

[1] The Court acknowledges the parties dispute whether the FAL requires affirmative representations. *Compare* Mot. at 15 n.12 ("The FAL requires affirmative representations."), *with* Opp'n at 15 ("Whiles Mars cite to a federal district court case coming to the opposite conclusion, many others have permitted FAL claims based on omissions."). The Court need not resolve this dispute, however, because even assuming that FAL claims can be premised on omissions, the Court concludes Defendants have no duty to disclose the allegedly omitted information.

[2] As clarified in their supplemental filing, Plaintiffs are no longer pursuing a theory that Defendants had a duty to disclose this information based on Defendants' partial representations and/or misrepresentations. Pls. Supp. at 6.

one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Id.* at 838. Accordingly, "California courts have generally rejected a broad obligation to disclose," and instead have held that "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson*, 668 F.3d at 1141. Following *Wilson*, several federal district courts have reaffirmed that a manufacturer's duty to affirmatively disclose information to consumers is confined to safety issues. *See, e.g.*, *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015) (citing *Wilson* and dismissing CLRA claims because plaintiffs "failed to plead the existence of any affirmative misrepresentations by Apple, and have not alleged any safety issues"); *see also Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 1117, 1132 (S.D. Cal. 2014) ("In *Wilson*, the Ninth Circuit rejected a broad obligation to disclose all material facts, but accepted that a manufacturer would be 'bound to disclose' a defect that posed safety concerns or risk of physical injury.") (citation omitted); *Hodges v. Apple Inc.*, Case No. 13-cv-01128-WHO, 2013 WL 6698762, at *4 (N.D. Cal. Dec. 19, 2013) ("To survive a motion to dismiss, the plaintiff must plead with particularity that the defendant made an actual misrepresentation, an omission 'contrary to a representation actually made by the defendants, or an omission of a fact the defendant was obliged to disclose' related to safety concerns.").

Here, Plaintiffs' position is that Defendants were obligated to disclose information concerning the likelihood of forced labor to consumers. Information concerning the possibility of forced labor in Defendants' supply chain, however, does not present any safety issues for consumers of Defendants' products. Nor does that information concern a product defect. Therefore, Defendants were not "bound to disclose" the omitted information. If Defendants had lied to consumers – by proclaiming there was no possibility that forced labor existed in their supply chain, for instance – then Plaintiffs would have actionable claims based on these misrepresentations. But absent any allegations concerning misrepresentations, the Court cannot conclude Defendants had an independent and broad duty to disclose information concerning the possibility of forced labor to consumers. Indeed, as the Ninth Circuit recognized in *Wilson*,

California courts have consciously rejected such a "broad obligation to disclose." *Wilson*, 668 F.3d at 1141.

A recent decision from a district court in this Circuit supports this conclusion. In *Hall*, Plaintiffs brought claims for violations of the UCL, FAL, and CLRA against Defendant SeaWorld. *Hall v. Sea World Ent., Inc.*, Case No. 3-15-CV-660-CAB-RBB, 2015 WL 9659911, at *2 (S.D. Cal. Dec. 23, 2015). Plaintiffs alleged that SeaWorld omitted information concerning the conditions and treatment of whales, and that if that information had been disclosed, they would not have purchased tickets to SeaWorld. *Id.* Relying on *Wilson*, the court dismissed Plaintiffs' claims because the omitted information concerning whales at the park had no bearing on the safety of plaintiffs who had visited SeaWorld. *Id.* at 7. In reaching this decision, the court discussed the policy considerations at play:

> To hold otherwise, simply because Plaintiffs allege that information about the whales' conditions and health, had it been disclosed, would have been material to them, would effectively require any company selling any product or service to affirmatively disclose every conceivable piece of information about that product or service (or even about the company generally) because inevitably some customer would find such information relevant to his or her purchase. Under the standard argued by Plaintiffs, any consumer would have standing to sue any company that fails to disclose product ingredients or components, or business practices that could cause that consumer to regret patronizing that business.

*Id.* at 7. The same rationale applies with equal force here.

Plaintiffs' attempts to distinguish this case and avoid this conclusion are unconvincing. Plaintiffs argue the Ninth Circuit's *Wilson* rule "only applies in product defect cases." Opp'n at 2. Plaintiffs reject the notion that Defendants have a limited duty to disclose only safety and product-related information and instead propose a broad rule that manufacturers have a duty to disclose *any* information that a reasonable consumer would deem material, relying almost exclusively on the district court's decision in *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212

-7-

(C.D. Cal. 2012). This argument is flawed for multiple reasons. First, based on this Court's reading, nothing in the text of *Wilson* restricts the holding to the product defect context. While *Wilson* itself was a product defect case, the opinion discusses the duty to disclose in general terms. *See Wilson*, 668 F.3d at 1141 ("California courts have generally rejected a broad obligation to disclose); *id.* ("Courts have also cited policy considerations to limit the duty to disclose . . . ."); *id.* at 1143 ("The remaining cases Plaintiffs cite to support their argument that a fact need only be material to trigger a duty to disclose are distinguishable from the present case . . . . Several other cases concern services rather than manufactured products."). Further, as Defendants highlight, "*Wilson* cites with approval *O'Shea v. Epson America, Inc.*, *a case that did not involve a product defect.*" Reply at 9 (internal citations omitted).

Second, several courts, including the Ninth Circuit and the *Hall* court, have applied the *Wilson* rule in non-product defect cases. *See, e.g.*, *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. App'x 608, 609 (9th Cir. 2014) (applying *Wilson* rule in case where alleged that defendant "fail[ed] to disclose internal fuel economy data for the Prius Hybrid [that] varied from the marketed EPA fuel economy estimates."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2012 WL 1030090, at *3 (applying *Wilson* rule and dismissing claims because Plaintiffs failed to "allege safety issues that were caused by the alleged inadequate nurse staffing").

Third, the Court does not find that Plaintiffs' reliance on *Stanwood* overcomes the significant contrary authority.[3] As an initial matter, there are important factual differences between this case and *Stanwood*. Reply at 11–12. But to the extent that *Stanwood* adopts a rule that manufacturers must disclose any information that consumers deem material in non-product

---

[3] While the Court previously expressed misgivings about the formulation of the *Wilson* rule, *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 489 n.9 (C.D. Cal. 2012), the Court of course treats Ninth Circuit authority as binding. The Court "is not free to deviate from the Ninth Circuit's construction of California law in *Wilson* absent subsequent interpretation from California's courts that the interpretation was incorrect." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (stating that a Ninth Circuit interpretation of state law "remains binding in the Ninth Circuit) (citing *Group v. Nat'l Union Fire Ins. Co.*, No. C 98-2555 CRB, 1999 WL 155697, at *2 (N.D. Cal. Mar. 16, 1999) ("[Defendant] merely argues that the *Lunsford* court misapplied California law. The Court is not aware of any authority, however, that permits a district court to disregard the ruling of its circuit on the ground that the district court believes the decision is incorrect.")).
As discussed, the Ninth Circuit has subsequently reaffirmed the rule in *Gray* and several districts have applied the *Wilson* rule.

defect cases, the Court declines to follow that sweeping holding.[4] This Court instead joins the Ninth Circuit and the many other district courts that have applied the *Wilson* rule in both product defect and non-product defect cases.

     Finally, the Court is troubled by Plaintiffs' proposed interpretation of the duty to disclose under California law because Plaintiffs offer no meaningful limiting principle. It is undisputed that consumers who rely on "misrepresentations and made a purchase as a result, may have standing under UCL, FAL, and CLRA." *Hall*, 2015 WL 9659911, at *8. But "[t]his unremarkable principle does not mean that a business enterprise has an affirmative duty to disclose *anything and everything* that might cause some consumers not to purchase its products, or risk liability for fraudulent conduct under these statutes." *Id.* Put differently, "although a plaintiff may have standing to assert a claim that he relied on the representations on a product label, the same plaintiff does not have standing to maintain a claim that he *assumed* characteristics or qualities of a product that were not on the label (with the exception of characteristics or qualities related to safety)." *Id.* The Court agrees with Plaintiffs that "labor practices," including the allegations here concerning forced labor in the supply chain, "do matter in making consumer choices." Opp'n at 3 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002)). But it does not follow that Defendants have a duty to disclose the nature of these labor practices – along with every other piece of information that consumers deem important – when making purchases. *See Hall*, 2015 WL 9659911, at *7; *see also Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1335 (2002) ("[I]n failing to advise its guests as to how it compensates its employees, the hotel is not guilty of any deceit even under the broad provisions of the UCL."). If that were the case, Defendants could be held liable for not including their products' environmental impact or their company's political contributions on the labels of pet food products.

    In short, Plaintiffs have failed to allege that Defendants omitted any facts they were obliged to disclose. The Court concludes that because Defendants had no duty to disclose the

---

[4] Indeed, the *Hall* court noted that it was "not persuaded by the basis upon which" *Stanwood* (and another case from the same court) distinguished *Wilson* and "disagrees with the virtually limitless duty to disclose that these holdings support." *Hall*, 2015 WL 9659911, at *7 n.10.

likelihood of forced labor on their product labels, Plaintiffs could not have relied on Defendants' failure to disclose that information.[5] As such, Plaintiffs' claims premised on these omissions are DISMISSED.

### B. Safe Harbor

Separately, Defendants contend their compliance with the relevant disclosure obligations shields them from liability under the safe harbor doctrine. Mot. at 14. As explained by the California Supreme Court, "[a]though the unfair competition law's scope is sweeping, it is not unlimited." *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999). Where state or federal law "has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.* In other words, "courts may not use the unfair competition law to condemn actions the Legislature permits." *Id.* at 184. Courts have applied the safe harbor doctrine to UCL, FAL, and CLRA claims. *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB (ASx), 2015 WL 3561536, at *3 (C.D. Cal. June 3, 2015) (applying the safe harbor doctrine to UCL, FAL, and CLRA claims).

Here, Defendants contend the California Transparency in Supply Chain Act of 2010 ("Supply Chains Act"), Cal. Civ. Code § 1714.43, creates a safe harbor from Plaintiffs' claims. Mot. at 14. According to Defendants, the Supply Chains Act "comprehensively sets forth what disclosures companies are required to make regarding the potential presence of forced labor in their supply chain." *Id.* The Supply Chain Act specifically provides that if a "manufacturer" doing business in California has more than $100 million in worldwide receipts, as Mars does, it must disclose five specific facts regarding its efforts to eradicate human trafficking and forced

---

[5] Plaintiffs' contention that Mars had "superior" or "exclusive" knowledge of the omitted information, *see* Opp'n at 5–8, does not alter the above analysis. Whether the defendant "had exclusive knowledge of material factors not known to the plaintiff" is one of the four *Judkin* factors. *See Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161,1174 (E.D. Cal. 2013). "The California Court of Appeals are split on whether these factors—which are outlined in *Judkins*, a fraudulent concealment case—properly apply to UCL and CLRA omission claims." *Id.* at 1174 n.2 (citations omitted). But as discussed above, this Court follows the binding *Wilson* decision, which concluded that, "[e]ven if this Court applies the factors from *Falk* regarding materiality, as Plaintiffs suggest, for the omission to be material, the failure must [still] pose safety concerns." *Wilson*, 668 F.3d at 1142 (internal quotation marks and citation omitted). Because Plaintiffs have failed to allege an omission that poses safety concerns, the Court's conclusion remains unchanged.

-10-

1 labor from its supply chain: whether the company (1) verifies it supply chain to evaluate the
2 risks of human trafficking and slavery, (2) conducts an audit of suppliers, (3) requires suppliers
3 to certify materials, (4) maintains internal accountability standards, and (5) provides employee
4 training. *See* Cal. Civ. Code §§ 1714.43(a), (c).

5 Because the Supply Chains Act mandates these disclosures, Defendants argue the
6 "California Legislature addressed the exact issue in this lawsuit—what information should
7 companies provide about a product's supply chain so that consumers can make informed
8 purchasing decisions—and found the enumerated disclosures—and nothing more—are
9 sufficient." Mot. at 15. Defendants argue that Plaintiffs wrongfully seek to force Mars to
10 disclose information the Supply Chains Act provides need not be disclosed – namely the
11 "likelihood" that slave labor is used in Defendants' supply chain. *Id.*

12 Plaintiffs do not argue Defendants failed to meet their disclosure obligations under the
13 Supply Chains Act. Rather, Plaintiffs contend the Supply Chain Act does not create a safe
14 harbor for Defendants' omissions. Opp'n at 11. In essence, Plaintiffs' position is that the
15 California Legislature did not directly address whether manufacturers must disclose
16 information concerning the likelihood of forced labor in their supply chains. From Plaintiffs'
17 perspective, the Supply Chains Act requires disclosures "regarding *preventative measures* to
18 ensure the absence of slave labor in a manufacturer's supply chain," but does not address the
19 "existence of slave labor in supply chains or nondisclosures regarding the existence of slave
20 labor in supply chains." *Id.* Thus, because the Supply Chains Act did not expressly permit Mars
21 to omit the existence of known slave labor in its supply chain, there can be no safe harbor. *Id.* at
22 13.

23 As stated above, the California Supreme Court held that safe harbors can be created in
24 two circumstances: (1) "[i]f the Legislature has permitted certain conduct," or (2) "considered a
25 situation and concluded no action should lie." *Cel-Tech*, 20 Cal. 4th at 182. Plaintiffs focus
26 their attention on whether the California Legislature expressly permitted manufacturers to omit
27 information concerning the likelihood of forced labor, and they correctly note the Supply
28

Chains Act does not explicitly allow manufacturers to omit information concerning the likelihood of forced labor from their product labels.

But Plaintiffs have not adequately engaged with the second scenario contemplated by *Cal-Tech* – that is, where the California Legislature "considered a situation and concluded no action should lie." *Id.* Defendants persuasively argue that scenario exists here. In enacting the Supply Chains Act, the California Legislature specifically considered the issue here: how much companies should disclose to consumers about the possibility of forced labor in their supply chains. Defendants point to compelling language from the Supply Chains Act's legislative history:

> [T]he bill simply seeks to ensure interested California consumers have reasonable access to basic information to aid their purchasing decisions . . . by requiring designated major retailers and manufacturers to disclose their efforts to eradicate slavery and human trafficking that could inadvertently be in their product supply chains . . . on [the] large retailer's or manufacturer's web site. . . . [T]he measure does not . . . require the relative[ly] narrow number of designated large companies to do anything other than [that].

Defs.' Request for Judicial Notice ("Defs. RJN") (Dkt. 23) Ex. G. at 2–3. The legislative history further provides that "[i]f the information the business provides is found by some consumers to reflect inadequate attention to this issue, then that is a business choice as to whether that is a wise course of action." *Id.* at 3. Based on this legislative history, it appears the California Legislature carefully delineated specific information that companies are required to disclose to consumers to aid their purchasing decisions.

In considering this exact issue in *Barber*, Judge Carney recently held that the "Court is persuaded that the California Legislature considered the situation of regulating disclosure by companies with possible forced labor in their supply lines and determined that only the limited disclosure mandated by § 1714.43 is required." *Barber v. Nestle USA, Inc.*, Case No. SACV 15-01364-CJC(AGRx), 2015 WL 9309553, at *4. The *Barber* court explained,

> This conclusion is supported both by the text of § 1714.43 and its legislative history. By its own terms, § 1714.43 requires disclosure to consumers—exactly the remedy Plaintiffs seek here. And the section carefully notes that it requires *only* the limited disclosures, and not even affirmative actions to combat human trafficking. *See* § 1714.43(c) (requiring companies only to 'disclose to what extent, if any,' they take steps to avoid slavery and human trafficking in supply chains).

*Id.* The *Barber* court concluded the language of the Supply Chains Act and the accompanying legislative history were "impossible to square with Plaintiffs' current contention that California consumer protection law requires companies to make disclosures beyond what § 1714.43 requires in order to adequately inform California consumers." *Id.* Based on the above, the Court agrees the California Legislature considered the exact issue in this case: what information companies are required to disclose to consumers about forced labor in their supply. By prescribing "*who* must disclose information about forced labor in their supply chains, *what* they must disclose, and *how* they must disclose it," Reply at 7, the California Legislature created a safe harbor that bars Plaintiffs' current claims.

Plaintiffs' three arguments to the contrary are unavailing. First, Plaintiffs read *Cel-Tech* to mean that in order for the safe harbor doctrine to apply, "another provision must actually 'bar' the action or clearly permit the conduct." Pls. Supp. at 4. Because no provision in the Supply Chains Act expressly bars the action, there can be no safe harbor. *See id.* The Court rejects this narrow interpretation of *Cel-Tech*. As stated above, the *Cel-Tech* decision provides that "[i]f the Legislature has permitted conduct *or considered a situation* and concluded no action should lie, courts may not override that determination." *Cel-Tech*, 20 Cal. 4th at 182 (emphasis added). Here, the evidence strongly supports a finding that the California Legislature carefully considered what disclosures companies are required to make. Therefore, the Court is not permitted to override that determination.

Second, Plaintiffs argues that courts are not empowered to create "implied safe harbors." Pls. Supp. at 5. By this, Plaintiffs mean that legislatures – not courts – should be the source of

any safe harbor exceptions. *Id.* at 5. The Court agrees with Plaintiffs that courts cannot create "implied safe harbors," *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 804 (2006), but the point is irrelevant here.[6] The California Legislature – by enacting the Supply Chains Act and mandating what disclosures are required – created a safe harbor in this case. Contrary to Plaintiffs' suggestion, *see* Pls. Supp. at 2, the Court is not adopting the legislative role and deciding which disclosures are warranted. Rather, the Court is respecting the California Legislature's careful judgment on which disclosures regarding forced labor are required, and which are not.[7]

Third, Plaintiffs argue the text of the Supply Chains Act prohibits a safe harbor here. Plaintiffs point to subsection (d) of the Supply Chains Act, which provides, "Nothing in this section shall limit remedies available for a violation of any other state or federal law." Plaintiffs take this language to mean that statues other than the Supply Chains Act itself may require Defendants to disclose information about the likelihood of forced labor in their supply chain. Pls. Supp. at 5. The Court disagrees. As Defendants noted, subsection (d) "simply clarifies that the Supply Chains Act, with its exclusive remedy provision, does not supplant other available remedies for violations of other state or federal laws." Mot. at 17. There is no reason, however, for the Court to conclude that subsection (d) precludes the application of the safe harbor doctrine where warranted.

Accordingly, the Court finds that in enacting the Supply Chains Act, the California Legislature created a safe harbor for the conduct challenged by Plaintiffs under the UCL, FAL, and CLRA. Thus, the Court concludes that the safe harbor doctrine provides a separate and independent basis for granting the Motion.

The Court notes that even though Defendant Proctor and Gamble Co. did not move for

---

[6] Plaintiffs' reliance on *Aron* is misplaced. In *Aron*, the court concluded that a statute concerning "passenger vehicles" could not be extended to include "motor truck" rental companies. *Aron*, 143 Cal. App. 4th at 804. Here, by contrast, the California Legislature directly addressed the issue of what disclosures companies are required to make regarding forced labor in their supply chain.

[7] As Defendants correctly argue, "when the legislature *does* address certain conduct, it need not explicitly permit or prohibit all examples of such conduct for the safe harbor to apply. In *Lopez v. Nissan North America, Inc.*, for example, the court dismissed UCL claims based on odometer readings that were in compliance with the relevant statute, yet slightly inaccurate, because "the Legislature ha[d] *implicitly* determined that any slight injury to consumers [from slightly inaccurate odometers] does not outweigh the harm if more stringent requirements from precision were to apply." Reply at 7 (quoting 201 Cal. App. 4th 571, 591–92 (2011)) (emphasis added).

dismissal, the Court holds that this Order applies to it as well. *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742–43 (citing *Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) (quoting *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that moving defendants.").

**IV.    Disposition**

For the foregoing reasons, Defendants' Motion is GRANTED, and because amendment would be futile, Plaintiffs' claims are DISMISSED WITH PREJUDICE.

DATED:  February 5, 2016

*[signature: David O. Carter]*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE